Opinion filed October 25, 2007


















 
 
  
 
 





 
 
  
 
 


Opinion filed October 25,
2007

 

 

 

 

 

 

                                                                       
In The

                                                                             


    Eleventh Court of Appeals

                                                                
____________

 

                                                         
No. 11-06-00039-CR

                                                    
__________

 

                               
BRIDGETT NELL BENSON, Appellant

 

                                                            
V.

 

                                       
STATE OF TEXAS,
Appellee

 





 

                                           
On Appeal from the 142nd District Court

 

                                                          
Midland County, Texas

 

                                                  
Trial Court Cause No. CR30628

 





 

                                                                  
O P I N I O N      

 

Bridgett
Nell Benson appeals her conviction by a jury of the offenses of burglary of a
habitation and theft of property of a value over $1,500 but less than
$20,000.  The jury assessed her punishment for the burglary at ten years
in the Texas Department of Criminal Justice, Institutional Division, and a fine
of $10,000 and recommended that it be suspended and Benson placed on community
supervision.  Benson was placed on community supervision for six
years.  The trial court ordered her to a court residential treatment
facility for an indeterminate term not to exceed twenty-four months.  She
was assessed confinement in jail for seventy-five days as a condition of her
community supervision or until she was transferred to the community treatment
facility.  The jury assessed her punishment for the theft at one year in
the Texas Department of Criminal Justice, State Jail Division, and a fine of
$500.  Benson contends in three issues that the evidence is legally
insufficient to support her conviction, that the trial court abused its
discretion in denying her challenge for cause to a member of the venire panel,
and that the trial court abused its discretion in allowing the State to go into
extraneous offenses.  We affirm.

Benson
urges in issue three that the evidence is legally insufficient to support her
convictions.  In order to determine if the evidence is legally sufficient,
the appellate court reviews all of the evidence in the light most favorable to
the verdict and determines whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S.
307, 319 (1979).

Benson
suggests that the evidence is insufficient because there is no direct evidence
that she committed either the burglary or the theft, and the description of
property that she had in her possession was insufficient for the jury to have
found that it was the property taken.  Morris Mayberry, Benson=s stepfather, testified
that on November 24, 2004, when he went at about 9:30 a.m. to take his wife to
the doctor, he left Benson in his home with two children to look after, her own
child and her grandchild.  He indicated that, when he returned that
evening just about dark, the front door was wide open, the back door was wide open,
things were thrown all over the floor, and a door had been broken. 
Mayberry indicated that the items taken included cash, two necklaces, a watch,
two guns, a Game Cube, and a DVD player.

Mayberry
described one of the necklaces as a diamond necklace to which his wife added a
diamond every Mother=s
Day, Easter, Valentine=s
Day, and her wedding anniversary.  He said there was also another
necklace.  He related that he had a watch that his son had given him from Germany. He
described the guns taken as a .32 caliber pistol and a pearl-handled .38
pistol.

Theodore
Roosevelt Macklin, a constable in Midland
 County, testified that he
is the father of Benson=s
son, one of the children she was caring for on the day in question at Mayberry=s house. He indicated that
he picked up his son from Benson at the Mayberry residence about five in the
afternoon and stayed there for about forty-five minutes.  He related that
Benson told him that her boyfriend was there at the house.

 

Macklin
testified that he later returned to the Mayberry residence after Mayberry
called and told him what had happened.  He indicated that while there he
noticed that his son=s
Game Cube with the Game Boy attached was missing, along with a DVD
player.  He stated that he saw a driver=s
license of Dennis Sterling that had been found on the floor.

Macklin
testified that, after leaving the residence, he decided to go to some drug
houses to see if Benson had tried to sell any of the property because that is
what had happened in the past.  He indicated that, after stopping at one
of the houses and asking about the Game Cube, Game Boy, 
and DVD player, he was called back shortly after he had left.  He
said that one of the persons at the house had the items.

Angela
Denise Hutson testified that, right before Thanksgiving
in 2004, Benson came by her house and asked her if she
would be interested in buying some jewelry.  She said Benson showed her a
necklace.  She indicated there was a watch also.  She related that
the necklace was pretty and had little diamond things on it.  Hutson could not recall whether the watch was a man=s or woman=s watch.

Dennis
Tyrone Sterling testified that while at the home of Benson=s daughter he gave his
driver=s license to
Benson=s boyfriend and
that she was with him.  He said he left it as assurance that he would
return with the proceeds from the sale of property that he was going to sell
for them.  He denied ever being present at the Mayberry residence.

Dedrick Andre Price testified that on or around November
24, 2004, Benson came to his home with a game and DVD player that she wanted to
sell.  He indicated that the game was like a little square box that is
hooked up to a television.  He said he returned them to ARooster.@ 
Macklin had previously testified that a lot of people knew him by his nickname ARooster.@

 

We
hold that the evidence is sufficient to support Benson=s conviction.  Benson urges that the
evidence is insufficient because the property that she possessed was
insufficiently described to show that it was the same property as that stolen
from Mayberry.  She relies on the case of Cantu v. State, 655
S.W.2d 278 (Tex. App.CCorpus
Christi 1983, no writ).  We find Cantu to be distinguishable. 
First, in Cantu, the description of the property in possession of the
defendant varied from the description of the property taken.  Id. at 279.  In this case, Benson was shown having several
items similar to those taken without there being any variance between the
description and the items she had in her possession.  Also, in Cantu,
the defendant was not shown to be at the premises at the time of the
burglary.  Id. 
In the case at bar, Benson was apparently at the premises near the time
when the burglary and theft would have been committed.  Also, as candidly
noted by Benson, Cantu utilized the analytical construct that in
circumstantial evidence cases the evidence must exclude all reasonable
hypotheses except the defendant=s
guilt.  Id.  
That analytical construct was abandoned in Geesa
v. State, 820 S.W.2d 154, 159 (Tex. Crim. App.
1991).  As noted by Benson, a conviction may no longer fall because the
property possessed is not shown to be the identical property taken.  Rogers v. State, 929 S.W.2d 103, 108 (Tex. App.CBeaumont 1996, no
pet.).  We overrule issue three.

Benson
insists in issue one that the trial court abused its discretion when it
overruled her challenge for cause of a potential juror who displayed bias
toward her.  One veniremember, when asked
whether she would need to hear from someone in order to find them not guilty,
replied: 

I
think that I have some issues that are in addition to this.  My home was
broken into, and all of my grandmother=s silver was stolen and all
of my husband=s guns
and a lot of things.  And the home was B
anyway, that, and on another occasion I had $20,000 stolen from me.  I
think I just really have a little problem.

 

When
asked if she felt that, because of those prior experiences, she could Anot
set them aside,@
she responded, AI don=t know.@  Defense counsel told
her that a “yes” or “no” answer was needed. 
When he said, “If you are telling us ‘I can’t say yes,’ then - ,” she
replied, “Probably I’m saying no.”  When
asked if she probably would be affected, she replied, “It would be difficult
for me.  That’s as far as I can go.” Benson
subsequently challenged the veniremember for cause.

After
the veniremember had been challenged for cause, she
was asked whether the fact that she had been a victim of burglary or theft
would form a bias in her mind in regard to this case.  She replied, AI would try very hard to be
fair.@  When
asked by the trial court whether she could be impartial based on her previous
life experiences, she answered, AI
would certainly try to.@ 
The court then asked, ADo
you believe that your B
do you think that forms a bias in regard to this case, just without how it=s going to affect you, do
you think it B .@  The veniremember replied, AI
know you want a >yes= or a >no,= but I have to tell you
that those experiences are part of me.@ 
When again asked by the court if her experiences created a bias in her mind in
this case, the veniremember replied that it would but
then indicated that it would not affect her verdict.

 

Bias
exists as a matter of law when a prospective juror admits that he is biased for
or against a defendant, admits prejudice against persons who use intoxicating
beverages when the defendant is charged with an offense involving liquor, or
admits or demonstrates prejudice toward a racial or ethnic class of which the
defendant is a member.  Green v. State, 840
S.W.2d 394, 404-05 (Tex. Crim. App. 1992).

When
a veniremember is shown to be biased as a matter of
law, he must be excused when challenged even if he states that he can set his
bias aside and provide a fair trial.  Id. at 405.  However, it is left to the discretion
of the trial court to initially determine whether such a bias exists, and the
court=s decision will
be reviewed in light of all the answers given.  Id.  We hold that the trial
court in this cause could reasonably have determined that, like the potential veniremember in Green, the veniremember
in this case harbored animosity toward those committing the offenses of
burglary or theft but harbored no bias toward Benson particularly and would not
allow her feelings to affect her verdict.  Therefore, the trial court did
not abuse its discretion in overruling Benson=s
challenge for cause.

Benson
principally relies upon the opinions in Holloway v. State, 666 S.W.2d
104 (Tex. Crim. App. 1984); Williams v. State,
565 S.W.2d 63, 65 (Tex. Crim. App. 1978); and Sykora v. State, 872 S.W.2d 323 (Tex. App.CBeaumont
1994, no pet.).  We find all of these cases to be distinguishable. 

In
Holloway, the veniremember never clearly
stated, as did the veniremember in this cause, that
her feelings resulting from numerous burglaries at her home would not affect
her verdict.  Holloway, 666 S.W.2d at 108. 
In Williams, the veniremember=s bias was directed against
the defendant because of personal feelings.  In this case, the veniremember was not shown to have a bias against the
defendant personally.  Williams, 565 S.W.2d at 65. 
In Sykora, the veniremember
never clearly stated, in view of preconceived notions deriving from her
experience as a nurse, that she could be objective.  Sykora,
872 S.W.2d at 324.  In the case at bar, the veniremember clearly stated that her feelings would not
affect her verdict.  We overrule issue one. 

 

Benson
asserts in issue two that the trial court abused its discretion by admitting
evidence of certain extraneous offenses into evidence.  She complains of
evidence of her stealing items from the Mayberrys,
some taken in the burglary but not included in the indictment and some taken
earlier in the year, and her taking their automobile in June 2002.  

Evidence
of other crimes, wrongs, or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.  Tex. R. Evid. 404(b). 
However, it is admissible for other purposes including identity, intent, and
knowledge provided that the State has provided reasonable notice of its intent
to produce such evidence.  Id. 
Also, in theft cases, evidence that the actor has previously participated in
recent transactions other than, but similar to, that upon which the prosecution
is based is admissible to show knowledge and intent B issues that are raised by the actor=s plea of not guilty. 
Tex. Pen. Code Ann. ' 31.03(c) (Vernon
Supp. 2006).

Benson
complains on appeal that the evidence was improperly admitted because (1) the
evidence is not relevant, (2) the probative value of the evidence was
substantially outweighed by unfair prejudice to the defendant, (3) the
extraneous offense of the theft or improper use of a motor vehicle was not
recent, and (4) the extraneous offenses were not sufficiently similar to the
offense charged in this cause.  Benson made no objection at trial that the
extraneous offenses were not relevant or were not sufficiently similar to the
offense charged and made no objection that the probative value of the evidence
was greatly outweighed by unfair prejudice to her.  Consequently, nothing
is preserved for review as to those complaints on appeal.  Tex. R. App. P. 33.1(a).  

Benson
did complain at trial that the use of the complainant=s automobile was not recent.  The
extraneous offense in question occurred a little more than two years prior to
the offense in question.  ARecent@
has been defined as Aof
or relating to a time not long past.@  Merriam-Webster Online Dictionary at http://www.merriam-webster.com/dictionary/recent. 
We consider a little more than two years ago as relating to a time not long
past.  We, therefore, hold that the trial court did not abuse its
discretion in impliedly finding that Benson=s
misuse of the complainant=s
vehicle was recent.  In arguing that it was not recent, Benson relies on
the case of Robledo v. State, 480
S.W.2d 401 (Tex. Crim. App. 1972).  We do not
consider Robledo controlling because it
is a part of a line of pre-Texas Rules of Evidence cases that were tried under
common-law principles that tended to favor the exclusion of evidence.  Corley v. State, 987 S.W.2d 615, 621 (Tex. App.CAustin
1999, no pet.).  The Texas Rules of Evidence favor the admission of
all logically relevant evidence.  Montgomery
v. State, 810 S.W.2d 372, 375 (Tex. Crim. App.
1991).

 

Benson
also complains of the admission of Macklin=s
testimony that Benson had gone to a drug house to sell property similar to that
taken in the burglary and theft.  Benson objected on the basis that the
State had failed to give her notice that it was seeking to present evidence of
drug activity, contending that the evidence was imputing drug activity on her
part.  We hold that the evidence imputed no drug activity on Benson=s part.  Instead, it
related to her activity in selling items similar to those taken in the burglary
and theft.  Because the matters presented by Benson in issue two were
either not preserved for review or are without merit, we overrule issue
two.  

The
judgment of the trial court is affirmed.

 

 

JOHN G. HILL

JUSTICE

 

October 25, 2007

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  McCall,
J.,

Strange, J.,
and Hill, J.[1]














[1]John G. Hill, Former Justice, Court of Appeals, 2nd District
of Texas at Fort Worth sitting by assignment.